UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:20-cv-1096

| | |
|---|---|
| SUPRIYA KHAZANIE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNIVERSITY OF NORTH CAROLINA )<br>AT CHAPEL HILL, UNC GILLINGS )<br>SCHOOL OF GLOBAL PUBLIC )<br>HEALTH, KATIE THORNSVARD, in )<br>her individual and official capacity as )<br>Associate Dean for Finance and )<br>Business, STEPHEN RAGAN, in his )<br>individual and official capacity as )<br>Assistant Dean of Human Resources, )<br>and BARBARA K. RIMER, in her )<br>individual and official capacity as Dean, )<br>)<br>Defendants. ) | **COMPLAINT**<br>**(Jury Trial Demanded)** |

NOW COMES Plaintiff Supriya Khazanie, by and through the undersigned counsel, complaining of Defendants as follows:

### NATURE OF THE ACTION

1. This is an action under 42 U.S.C. § 1981 to correct unlawful employment practices by Defendant University of North Carolina Gillings School of Public Health ("UNC Gillings SPH") on the basis of race and to make whole Plaintiff Supriya Khazanie ("Plaintiff" or "Khazanie").

2. This is also an action under Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000e et seq.) to correct unlawful employment practices by Defendant UNC Gillings SPH on the basis of race, color, sex, religion, and retaliation

-1-

and to make whole Plaintiff Khazanie.

## PARTIES, JURISDICTION AND VENUE

3. Plaintiff is an individual, over the age of eighteen. She was employed by Defendant University of North Carolina and Defendant UNC Gillings SPH at the time of the acts alleged in this Complaint and lives in Raleigh, North Carolina. Plaintiff Khazanie lives in Wake County, North Carolina.

4. Defendant University of North Carolina at Chapel Hill (UNC-CH) has been and is now a body politic and corporate, an entity the State of North Carolina, and is capable of suing and being sued, as set out in N.C. Gen. Stat. § 116-3 and employed Plaintiff at all relevant times and is located in Orange County, North Carolina.

5. Defendant UNC Gillings School of Public Health (Gillings SPH) is a school located within Defendant UNC-CH.

6. The individual Defendants, Thornsvard, Rimer and Ragan were at all relevant times employees and agents of the Defendant UNC-CH and Gillings SPH and supervisors of the Plaintiff.

7. This Court has jurisdiction over Plaintiff's Title VII and § 1981 claims under 28 U.S.C. §§ 1331 and 1343(4), 42 U.S.C. § 1981a(a), and 42 U.S.C. § 2000e-5(f).

8. The acts which are the subject of this action and alleged to be unlawful were committed in the Middle District of North Carolina.

## STATEMENT OF CLAIMS

9. More than thirty (30) days prior to the institution of this lawsuit, Plaintiff filed a Charge with the Equal Employment Opportunity Commission alleging violations of Title VII by Defendant. Plaintiff was issued a right to sue letter on September 8, 2020. All conditions precedent to the institution of this lawsuit have been fulfilled.

10. Defendant discharged Plaintiff from her position because of her race, color, sex, and religion and subjected her to discriminatory terms and conditions of employment in violation of 42 U.S.C.§ 2000e et seq. and 42 U.S.C. § 1981.

11. Defendant also retaliated against Plaintiff for opposing unlawful discrimination based on her race, color, sex, and religion in violation of 42 U.S.C. § 2000e2 and § 2000e3.

## STATEMENT OF FACTS

12. All allegations of each paragraph of this Complaint are incorporated into each Count thereof, as though fully set out therein.

13. Defendants' stated reasons for terminating Plaintiff just prior to the end of her one year probationary period were: "lack of competence at the advanced level, inability to work independently, low work output, and inability to recognize inaccuracies in your calculations and reporting." Objectively, none of the stated reasons were true.

14. These stated reasons were pretextual. Plaintiff was terminated because of her race, color, sex, and religion and in retaliation for complaining about illegal

discrimination.

15. Plaintiff, a female, of Indian descent is an actively practicing Hindu and was the only woman of color on her team when she was hired.

16. Plaintiff was hired January 14, 2019, for the position of Financial Analyst with Defendant UNC Gillings SPH. Plaintiff was well qualified for this position, holding a Master of Business Administration (MBA) degree and a Master of Science in Accounting (MSA) degree.

17. Plaintiff was terminated by Defendant Thornsvard on January 6, just 8 days before she would have become a permanent state employee and vested with property rights.

18. When Plaintiff was hired in January 2019, Defendant Thornsvard made no attempt to provide her any training other than to print out a page of on-line trainings and give them to Plaintiff. Defendant Thornsvard made statements like "I'm really dropping the ball on training you" and "I need to get my head above water so we can meet." No one-on-one trainings ever occurred.

19. In February, an African American woman was hired as a business manager in the Health Behavior department and Defendant Thornsvard failed to provide her with one-on-one trainings as well. However, when a White woman was hired in July in the Maternal and Child Health department, Defendant Thornsvard set aside one hour every week as a standing meeting to train her. Another White woman was hired as a business manager in October in the Public Health Leadership program, and she was also given standing meetings each week with Defendant

Thornsvard for training.

20. When Plaintiff sought to schedule meetings with Defendant Thornsvard, Defendant Thornsvard would close her door, block off her calendar, and indicate via email or otherwise that she was not available to train Plaintiff.

21. Plaintiff received a quarterly review in April 2019 for the first quarter of 2019. In the quarterly review, Defendants praised Plaintiff's "exceptional technical knowledge and amazing skills," and otherwise made no mention of any perceived lack of competence at the advanced level. Although Plaintiff repeatedly requested subsequent quarterly reviews which were standard, no additional quarterly reviews were provided to her either orally or in writing. On no occasion did Defendants ever speak to Plaintiff about a lack of competence or advanced skills.

22. In the only quarterly review Plaintiff received, rather than suggesting the need to improve her ability to work independently, Plaintiff's supervisor stated: "She is very analytical and I like the way she works through issues and challenges in her work."

23. On more than one occasion during her employment with Defendant UNC Gillings SPH Plaintiff was praised for her work. On occasion Plaintiff was commended by Thornsvard, but she was also praised by other Deans and department heads to whom she was presenting analysis.

24. In March of 2019 Plaintiff received applause after presenting her first financial model to eight department heads. Afterwards, Defendant Thornsvard denied that any such applause occurred.

25. After presenting financial models she had created to Dr. Michael Kosorok, a department chair, in June of 2019, Dr. Kosorok praised Plaintiff's work as "the most knowledgeable and thorough work he had seen in fourteen years."

26. Plaintiff reported to Thornsvard immediately thereafter that the meeting went well. Defendant Thornsvard then said to Plaintiff that stated that she noticed that whenever male managers came to Plaintiff's office for a meeting, Plaintiff "took her hair down for them." Plaintiff was shocked by this comment and the implication that Plaintiff's kudos from the UNC Gillings School management were due to Plaintiff's appearance or flirting, as opposed to her work product and skills. She fled to the restroom in tears over this barbed remark directed to her because she was female.

27. After this interaction, Plaintiff stopped wearing her hair down.

28. On July 16, 2019, Defendant Thornsvard sent an email saying that she wanted to let Plaintiff know that Defendant Rimer said Plaintiff is "amazing". Defendant Rimer also repeatedly praised Plaintiff about how thorough, well researched, knowledgeable, and incredible her work and presentations were.

29. On numerous occasions, Defendant Thornsvard would harass Plaintiff if she went to the bathroom or went to get water by putting Post It notes on her computer screen. This harassment was only towards Plaintiff and not the other white members of the staff.

30. Defendant Thornsvard did not allow Plaintiff to eat lunch away from her desk or take a walk saying she wanted Plaintiff "head down, at your desk". She

commented happily when she saw that Plaintiff had not gotten up from her desk for the full day saying "I love that you're head down in your office and not coming up for air".

31. Plaintiff attempted to walk away or eat outside when the weather was good outside, and Defendant Thornsvard would either harass Plaintiff as soon as she returned or make snide comments about how she was not "head down, at her desk where I like you to be," Plaintiff subsequently never attempted to eat away from desk or take a walk ever again.

32. Plaintiff acquired her own mini fridge and put it in her office so that she would not have to walk away from her desk to the break room to get her lunch or a snack and receive more verbal harassment from Defendant for stepping away.

33. On numerous occasions, Defendant Thornsvard made fun of Plaintiff for her eating habits in front of her colleagues and co-workers. For example, she would make statements like: "Supriya does nothing but eat," "Supriya has no willpower when it comes to food," "Supriya has no self-control," "Hey Supriya, I saw some free pizza out in the hall, I know you have no self-control, you should go quick and go get some."

34. Plaintiff became so self-conscious that she couldn't eat unless she closed the door to her office.

35. Defendant Thornsvard clearly bullied Plaintiff regarding food because she was a woman. If she had been a man and made the same comments to Plaintiff, her comments would clearly have been perceived as sexual harassment.

36. Following this interaction with Thornsvard, Plaintiff attended a UNC symposium on the elements of harassment and discrimination in September 2019. When she described her treatment by her supervisor, everyone in her group implored her to report her treatment to Human Resources.

37. After the symposium, Plaintiff filed a formal grievance with her employer's Human Resources department about the treatment received from Thornsvard. Janet Scarce told her that Thornsvard had just gotten a promotion and that Plaintiff should not "mess with her."

38. Plaintiff also discussed Defendant Thornsvard's discriminatory treatment of her with Defendant Ragan. Plaintiff was advised by Defendant Stephen Ragan to speak with Thornsvard directly. At no time did he indicate that he took her allegations of a hostile work environment seriously or that he would investigate the matters further.

39. When Plaintiff broached the topic with Defendant Thornsvard, Defendant Thornsvard claimed to be "joking" when she made her remarks to Plaintiff. Defendant Thornsvard also claimed to have "self-reported" her remarks to Defendant Ragan.

40. The reasons given in the termination letter for Plaintiff's dismissal were false. Plaintiff's work output was not low nor was she prone to inaccuracies that she had an inability to recognize. In fact, the only quarterly review Plaintiff received stated specifically: "She takes ownership of her work and admit to errors (of which there have been very few)".

41. At a staff meeting in July of 2019 where the staff were discussing what actions the department had taken with respect to diversity, a white team member stated: "we hired Plaintiff." Defendant Thornsvard laughed at this comment. Plaintiff was stung that Thornsvard encouraged the implication that Plaintiff was hired only for traits that had nothing to do with her abilities.

42. Plaintiff Khazanie expressed to both the colleague and to Thornsvard that she felt the comment implied that she was not the best qualified person when she was hired.

43. Other comments and continuing treatment Plaintiff received from Defendants were not only harassing but clearly different from the treatment extended to white staff members.

44. Plaintiff never received any training for her job although Defendant Thornsvard repeatedly said such training would be forthcoming. Two subsequently hired white employees were extended weekly one hour, one-on-one training sessions with Thornsvard.

45. Plaintiff's efforts for in person meetings with her supervisor Defendant Thornsvard were most frequently rebuffed. After July, Defendant Thornsvard repeatedly either failed to schedule meetings with Plaintiff or failed to show up for scheduled meetings. Thornsvard frequently ignored Plaintiff's email requests and refused to review her work.

46. Defendant Thornsvard was informed that Plaintiff attended a daily religious yoga session at her Hindu temple, which often required her to be 15 minutes

late for her 9 am start time. Plaintiff offered to work late to accommodate this religious practice but working late to make up the time was rejected by Defendant Thornsvard so Plaintiff stopped attending the temple.

47. On one occasion, Plaintiff requested a one-time two week, thirty minute per day work schedule time adjustment to attend sessions with a special teacher from India at her Temple. Thornsvard granted this request but made an announcement about this accommodation to all team members which embarrassed Plaintiff and brought unnecessary and unwanted attention to her personal religious practices.

48. Defendant Thornsvard repeatedly embarrassed Plaintiff in front of others by commenting negatively about her attire (too corporate), her eating (stating Plaintiff had no self-control), and her personality (too happy, too talkative);

49. Defendant Thornsvard also accused Plaintiff of having no interpersonal skills and required her to attend "emotional intelligence" training so she could "learn to talk to people"; this feedback was completely incongruent with previous feedback Plaintiff had received in school and prior employment situations.

50. Plaintiff was denied her requested vacation time although she requested the time well in advance and as of the time requested on the grounds that she lacked .07 hours for the two week vacation. On information and belief, no other employees' requested vacation times requested were denied.

51. Plaintiff was required to work in the office, instead of from home at times when most other employees were allowed to work from home.

52. Defendant Thornsvard accused Plaintiff on several occasions of being

-10-

Case 1:20-cv-01096-NCT-JEP   Document 1   Filed 12/07/20   Page 10 of 16

"lazy," "goofing off," or being "too social" even though Plaintiff continued to produce as much if not more work than other team members and all work required was delivered in a timely manner.

53. Moreover, Defendant Thornsvard did not document any specific work failings in any quarterly reviews after the April 2019 review; Plaintiff received no reviews in July or October.

54. During Plaintiff's employment, on several occasions Defendant Thornsvard took credit for Plaintiff's work and in a meeting with others required Plaintiff to explain and take responsibility for a mistake Thornsvard herself had made.

55. In December 2019, Plaintiff met with the Associate Dean of Student Affairs and showed her hostile emails Plaintiff had received from Defendant Thornsvard. The Dean suggested they meet again in mid-January with the Dean of Diversity and Inclusive Excellence at the end of Plaintiff's probationary period.

56. Plaintiff was terminated January 6, 2020, one week before the end of her Probationary period and thus was unable to meet with either the Dean of Student Affairs or the Dean of Diversity and Inclusive Excellence. Neither of those individuals ever reached out to Plaintiff after her termination.

**COUNT ONE: RACE, COLOR, SEX, AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII**

57. Plaintiff Khazanie is female, of Indian descent, and a practicing Hindu.

58. Plaintiff is a member of several protected classes and was qualified for her position when Defendants terminated her employment.

59. Defendant Thornsvard regularly made discriminatory comments to Plaintiff and marginalized her by treating other employees more favorably.

60. Defendant Thornsvard's actions were reported to Defendant Ragan who, along with Defendant Thornsvard, were under the supervision of Defendant Rimer and no action was taken by Defendants Ragan or Rimer.

61. Plaintiff suffered damages as a result of Defendants' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

62. Defendants intentionally violated Plaintiff's rights under Title VII, with malice or reckless indifference, and, as a result, are liable for punitive damages.

## COUNT TWO
## RETALIATION IN VIOLATION OF TITLE VI

63. Defendant Thornsvard's actions were reported to Defendant Ragan who, along with Defendant Thornsvard, were under the supervision of Defendant Rimer and no action was taken by Defendants Ragan or Rimer to abate the discriminatory treatment of Plaintiff nor to investigate Plaintiff's allegations.

64. The dismissal letter signed by Defendant Thornsvard contained pretextual reasons for Plaintiff's dismissal which had never been addressed with Plaintiff during the course of her employment which lacked 8 days of constituting property under State law.

65. Instead, Defendant Thornsvard was allowed to proffer pretextual reasons as a basis to terminate Plaintiff in retaliation for her resisting the discriminatory treatment to which Thornsvard subjected Plaintiff. Both Defendant

Ragan nor Defendant Rimer ratified the discriminatory and retaliatory actions of Defendant Thornsvard by their inaction.

66. Plaintiff Khazanie suffered damages as a result of Defendants' unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

67. Defendants intentionally violated Plaintiff's rights under Title VII, with malice or reckless indifference, and, as a result, are liable for punitive damages.

## COUNT THREE: RACE DISCRIMINATION
## (SECTION 1981)

68. Plaintiff Khazanie's race is Indian.

69. Defendant Thornsvard regularly made discriminatory comments to Plaintiff and treated other non-Indian and non-employees of color more favorably .

70. Defendant Thornsvard's actions were reported to Defendant Ragan who, along with Defendant Thornsvard, were under the supervision of Defendant Rimer and no action was taken either Defendant Ragan or Defendant Rimer.

71. Plaintiff suffered damages as a result of Defendants' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

72. Defendants intentionally violated Plaintiff's rights under section 1981 with malice or reckless indifference, and, as a result, are liable for punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court:

1. Issue an injunction directing the Defendants to re-employ Plaintiff in

the position of Financial Analyst.

2. That this Court enjoin the Defendants from discriminating on the basis on race, color, religion, or sex in the terms and conditions of employment;

3. That this Court enjoin the Defendants from retaliating against employees who protest illegal discrimination in the terms and conditions of employment;

4. That this Court order Defendants to make whole Plaintiff by providing her with appropriate lost earnings and other lost benefits, with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, reinstatement;

5. That this Court order Defendants to make whole Plaintiff by providing compensation for pecuniary losses, including, but not limited to, costs incurred for health and life insurance premiums and costs of seeking new employment, in amounts to be determined at trial;

6. That this Court order Defendants to make whole Plaintiff by providing compensation for nonpecuniary losses, including emotional pain, suffering, inconvenience, and mental anguish in amounts to be proven at trial;

7. That this Court order Defendants to institute and carry out policies, practices, and programs which provide equal opportunities to qualified individuals, and which eradicate the effects of past and present unlawful practices;

8. That this Court award the Plaintiff reasonable attorney's fees and the

other costs of this action;

     9.    That this Court award Plaintiff such other and further relief as may be just and equitable.

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial on all questions of fact raised by the Complaint.

Respectfully submitted, this the 7th day of December 2020.

> /S/ VALERIE BATEMAN
> FORREST FIRM, P.C.
> 406 Blackwell St., Suite 420
> Durham, NC 27701
> NC State Bar: 13417
> Valerie.bateman@forrestfirm.com
>
> /S/ JUNE ALLISON
> FORREST FIRM, P.C.
> 520 East Morehead Street, Suite 405
> Durham, NC 27701
> NC State Bar: 9673
> June.allison@forrestfirm.com
>
> *Attorneys for Plaintiff*

# VERIFICATION OF SUPRIYA KHAZANIE

SUPRIYA KHAZANI, being duly sworn, deposes and says:

That the contents of the foregoing Complaint about which she has knowledge are true to her own knowledge, except as to matters stated on information and belief, and as to those matters, she believes them to be true.

_____
SUPRIYA KHAZANIE

Subscribed and sworn to before me this day

by Supriya Khazanie

on the __7__ day of __December__ 2020.

_____
NOTARY PUBLIC

My Commission Expires:

12/7/2021

