IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SUPRIYA KHAZANIE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNIVERSITY OF NORTH CAROLINA )<br>AT CHAPEL HILL, UNC GILLINGS )<br>SCHOOL OF GLOBAL PUBLIC )<br>HEALTH, KATIE THORNSVARD, in )<br>her individual and official capacity as )<br>Associate Dean for Finance and )<br>Business, STEPHEN RAGAN, in his )<br>individual and official capacity as )<br>Assistant Dean of Human Resources, )<br>and BARBARA K. RIMER, in her )<br>individual and official capacity as )<br>Dean, )<br>)<br>Defendants. ) | 1:20CV1096 |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint [Doc. #18] and Plaintiff's Motion to Amend Complaint [Doc. #27]. Plaintiff Supriya Khazanie alleges that Defendants discriminated against her on the basis of her race, color, sex, national origin, and religion when they terminated her employment. For the reasons that follow, the motion to dismiss is granted in part and denied in part, and the motion to amend is granted in part and denied in part.

I.

As alleged in her Complaint, Khazanie is a female of Indian descent who is a practicing Hindu. (Compl. ¶ 15.) She holds a Master of Business Administration degree and a Master of Science in Accounting degree. (Id. ¶ 16.) On January 14, 2019, she was hired as a Financial Analyst with Defendant UNC Gillings School of Global Public Health and, at the time, was the only woman of color on her team. (Id. ¶¶ 15-16.) The extent of the training provided by her supervisor, Defendant Katie Thornsvard, was a print-out of online trainings. (Id. ¶ 18.) Thornsvard commented that she was "really dropping the ball on training" Khazanie and that she "need[ed] to get [her] head above water so [they could] meet." (Id.) But, no one-on-one trainings ever occurred, and despite Khazanie's efforts, Thornsvard closed her door, blocked off her calendar, and indicated via email that she was not available to train Khazanie. (Id. ¶¶ 18, 20.) However, Thornsvard had standing weekly training meetings with two white females who were hired in July and October in the Maternal and Child Health department and the Public Health Leadership program, respectively. (Id. ¶ 19.)

Despite the lack of one-on-one training, Khazanie was recognized by various supervisors, deans, and department heads for the quality of her work. In April 2019 at her quarterly review (the only quarterly review she received), "Defendants" praised her "'exceptional technical knowledge and amazing skills,'" and her "supervisor" stated, "'She is very analytical and I like the way she works through issues and challenges in her work.'" (Id. ¶¶ 21-22.) It was also noted that

2

she took "ownership of her work and admit[ted] to errors (of which there have been very few)'." (Id. ¶ 40.) In June, Dr. Michael Kosorok, a department chair, praised her work as "'the most knowledgeable and thorough work he had seen in fourteen years", and the following month Defendant Barbara K. Rimer told Thornsvard that Khazanie was "'amazing'". (Id. ¶¶ 25, 28.) In addition, at other times Rimer repeatedly commended Khazanie for her thorough, well researched, knowledgeable, and incredible work. (Id. ¶ 28.) On occasion, Thornsvard praised Khazanie, as well. (Id. ¶ 23.)

However, Thornsvard's treatment of Khazanie was not otherwise so kind. After Khazanie reported to her that the June meeting with Dr. Kosorok went well, Thornsvard said that she noticed Khazanie always "'took her hair down for'" male managers who came to her office for a meeting. (Id. ¶ 26.) On numerous occasions, Thornsvard put Post It notes on Khazanie's computer screen when she went to the bathroom or to get water (which she did not do to white staff). (Id. ¶ 29.) She did not allow Khazanie to eat lunch away from her desk or take a walk and complimented her when she did not leave her desk. (Id. ¶ 30.)

Thornsvard made fun of Khazanie's eating habits on numerous occasions, saying Khazanie "does nothing but eat", "has no willpower when it comes to food", and "has no self-control". (Id. ¶ 33.) She also repeatedly embarrassed Khazanie by commenting that her attire was too corporate and her personality was too happy and too talkative. (Id. ¶ 48.) On several occasions, Thornsvard told Khazanie that she was "'lazy,' 'goofing off,' or being 'too social'" even though

3

Khazanie was producing at least as much work as her team members. (Id. ¶ 52.) She required Khazanie to attend "'emotional intelligence'" training. (Id. ¶ 49.)

She denied Khazanie's vacation request because Khazanie lacked .07 hours for the two-week vacation (but, on information and belief, no other employees' requested vacation was denied). (Id. ¶ 50.) Khazanie was required to work from the office while most other employees were allowed to work from home. (Id. ¶ 51.) On several occasions, Thornsvard took credit for Khazanie's work and in a meeting with others required Khazanie to take responsibility for Thornsvard's mistake. (Id. ¶ 54.)

At a July meeting, staff discussed the department's diversity actions, and a white team member said, "'[W]e hired [Khazanie]'", and Thornsvard laughed. (Id. ¶ 41.) When Thornsvard learned that Khazanie attended a daily religious yoga session at her Hindu temple that often required her to be fifteen minutes late to work, Thornsvard rejected Khazanie's offer to work late to make up the time so Khazanie stopped attending the temple. (Id. ¶ 46.) However, Thornsvard did grant Khazanie's request for a one-time two-week thirty-minute per day adjustment to her work schedule to attend sessions with a special teacher form India at her temple, but Thornsvard announced this to the team members which embarrassed Khazanie. (Id. ¶ 47.)

After a September symposium on harassment and discrimination, Khazanie filed a formal grievance with the human resources department "about the treatment received from Thornsvard" and was told that she "should not 'mess

4

with her.'" (Id. ¶¶ 36-37.) She also discussed "Thornsvard's discriminatory treatment of her" with Defendant Stephen Ragan who told her to talk with Thornsvard directly. (Id. ¶ 38.) Khazanie did so, and Thornsvard said she had already "'self-reported' her remarks" to Ragan and claimed to be "'joking'". (Id. ¶ 39.) Months later in December, Khazanie met with the Associate Dean of Student Affairs and showed her "hostile emails" she had received from Thornsvard. (Id. ¶ 55.) The Associate Dean suggested "they" meet with the Dean of Diversity and Inclusive Excellence the following month. (Id.)

But, Khazanie was terminated on January 6, 2020, one week before the end of her one-year probationary period of employment. (Id. ¶¶ 13, 56.) Defendants stated that she was terminated for "'lack of competence at the advanced level, inability to work independently, low work output, and inability to recognize inaccuracies in [her] calculations and reporting.'" (Id. ¶ 13.) Yet, at no time had Defendants ever spoken to Khazanie about lack of competence or advanced skills. (Id. ¶ 21.)

II.

Khazanie alleges against all Defendants that her termination was discrimination on the basis of race, color, sex, national origin, and religion in violation of Title VII (Count One), her termination was in retaliation for reporting discriminatory conduct in violation of Title VII (Count Two), and her termination was race discrimination in violation of 42 U.S.C. § 1981 (Count Three).

A.

Defendants have moved to dismiss each count.  They argue that Title VII does not allow claims against individuals, that the Title VII official capacity claims are duplicative of the claims against Defendant University of North Carolina at Chapel Hill and UNC Gillings School of Global Public Health (collectively referred to as "UNC-CH")[1], and that Khazanie has otherwise failed to state a Title VII Claim against any Defendant. (Defs.' Mot. to Dismiss at 2.)  They also argue that § 1981 does not allow claims against UNC-CH or the individual defendants in their official capacities and that Khazanie has otherwise failed to state a § 1981 claim against any Defendant. (Id.)

After Khazanie responded in opposition, she filed an Amended Complaint. However, because that filing did not comport with the Rules of Civil Procedure, it was stricken. (Am. Compl. [Doc. #25]; Order [Doc. #26].)  The following day, Khazanie moved to amend the complaint.  Although she did not attach the proposed Amended Complaint as Local Rule 15.1 requires, it is assumed for purposes of the motion that the stricken Amended Complaint is the proposed Amended Complaint.  Defendants oppose the motion to amend on the ground that doing so would be futile. (Resp. to Pl.'s Mot. for Leave to Amend Complaint [Doc. #29].)

---

[1] Defendants note in their brief opposing amendment that Gillings School of Global Public Health "is not a separately existing legal entity".  That is an issue for another day.  It does not appear that Defendants are seeking to dismiss that defendant at this stage, as they only mention it in a footnote in a brief opposing amendment.

6

Although a "court should freely give leave [to amend] when justice so requires", Fed. R. Civ. P. 15(a)(2), leave may be denied based on "prejudice, bad faith, or futility", Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986). An amendment is futile if the amended complaint would not survive a Rule 12(b)(6) motion to dismiss. In re Triangle Capital Corp. Sec. Litig., 988 F.3d 743, 750 (4th Cir. 2021); see also Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011) ("Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards".).

To survive a motion to dismiss made pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (noting that a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face in the sense that the complaint's factual allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). However, when a complaint states facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"" Iqbal, 556

7

U.S. at 678 (quoting Twombly, 550 U.S. at 557). When evaluating whether the complaint states a claim that is plausible on its face, the facts are construed in the light most favorable to the plaintiff and all reasonable inferences are drawn in his favor. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). Nevertheless, "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" and "naked assertions . . . without some further factual enhancement" are insufficient. Twombly, 550 U.S. at 557. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level". Id. at 555.

B.

1.

In her Complaint, Khazanie alleges claims of discrimination (Count One) and retaliation (Count Two) in violation of Title VII apparently against UNC-CH, UNC Gillings School of Global Public Health, and the individual defendants in their individual and official capacities. Defendants first argue in their motion to dismiss that individuals cannot be liable under Title VII and the claims against the individual defendants in their official capacities are duplicative of the claims against UNC-CH. Indeed, "supervisors are not liable in their individual capacities for Title VII violations" because they are not the employer. Lissau v. S. Food Serv., Inc., 159 F.3d 177, 181 (4th Cir. 1998). Thus, the Title VII claims against the individual defendants in their individual capacities are dismissed. Khazanie

8

appears to concede this issue because she does not pursue Title VII individual capacity claims in her proposed Amended Complaint.

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)). Thus, the official capacity claims here against the individual defendants are "essentially" claims against UNC-CH. Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (citing Kentucky, 473 U.S. at 165-66; Hicks v. Halifax Cty. Bd. of Educ., 93 F. Supp. 2d 649, 667 (E.D.N.C. 1999)). Therefore, although Khazanie no longer asserts individual capacity claims in her proposed Amended Complaint, her official capacity claims must be dismissed as duplicative of her claims against UNC-CH. That leaves her Title VII claims as against UNC-CH only.

2.

Defendants next argue that Khazanie has not sufficiently alleged facts in support of her claim of discrimination on the basis of race, color, sex, national origin, or religion[2] in violation of Title VII (Count One). And, they oppose amending the Complaint because Khazanie has not proposed substantively amending her factual allegations and, thus, amendment would be futile.

---

[2] Khazanie includes race, color, sex, and national origin in the title of Count One, but omits religion. Nevertheless, she alleges that she is a practicing Hindu, and she earlier identifies religion as a basis for her Title VII claim.

9

Defendants argue that "[m]ost of the alleged incidents in the Complaint do not even invoke or involve race, color, sex, or religion or an adverse employment action" and that, "at most" the allegations show "that working with Defendant Thornsvard was unpleasant." (Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Br. in Supp.") at 11, 12-18 [Doc. #19].) To the extent that Khazanie relies on comparators to support an inference of discrimination, Defendants contend that they are not alleged to be sufficiently similarly situated. (Id. at 13-14.)

Title VII prohibits employers from "discharg[ing] any individual . . . because of such individual's race, color, religion, sex, or national origin". 42 U.S.C. § 2000e-2(a)(1). The Fourth Circuit Court of Appeals recently explained,

> [i]n the context of a Title VII case, "an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a motion to dismiss, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515, 122 S. Ct. 992, 152 L.E.2d 1 (2002). Instead, a Title VII plaintiff is "required to allege facts to satisfy the elements of a cause of action created by the that statute." McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015). The pertinent statute, Title VII, prohibits an employer from "discharg[ing] any individual, or [] otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's [protected trait]." 42 U.S.C. § 2000e-2(a)(1). Accordingly, our inquiry is whether [the plaintiff] alleges facts that plausibly state a violation of Title VII "above the speculative level." Coleman v. Md. Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010) (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955); see also McCleary-Evans, 780 F.3d at 585-86.

Bing v. Brivo Sys., LLC, 959 F.3d 605, 616-17 (2020) (final two alterations added) (footnote omitted).

Furthermore, to support an inference of discrimination a plaintiff may identify a similarly situated comparator who was treated differently, but she is not required to do so. Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 545-46 (4th Cir. 2003). And, even if she were to rely on comparators, "[t]he similarly situated analysis typically occurs in the context of establishing a prima facie case of discrimination, not at the 12(b)(6) stage." Woods v. City of Greensboro, 855 F.3d 639, 650-51 (4th Cir. 2017) (recognizing that "differences exist between the facts alleged in the case at bar and each of the comparative exemplars that [the plaintiff] offers" but "evidentiary determinations regarding whether the comparators' features are sufficiently similar to constitute appropriate comparisons generally should not be made at this point").

Finally, although pretext is not analyzed at the 12(b)(6) stage, "under Iqbal and Twombly, the [c]ourt must consider the plausibility of inferring discrimination based on [the plaintiff's] allegations in light of an 'obvious alternative explanation' for the conduct." Id. at 649 (quoting Iqbal, 556 U.S. at 682). "In other words, while [the plaintiff] need not establish a prima facie case at this stage, . . . [the court] must be satisfied that [the defendant's] explanation for [its actions] does not render [the plaintiff's] allegations implausible. Id.; see also id. (describing the question as "whether [the defendant's] impliedly proffered reason . . . is so obviously an irrefutably sound and unambiguously nondiscriminatory and non-pretextual explanation that it renders [the plaintiff's] claim of pretext implausible").

Accepting the facts as true and construing them and all reasonable inferences in Khazanie's favor as is required at this stage, she has alleged facts that plausibly state against UNC-CH a claim of discrimination on the basis of her race, color, and sex in violation of Title VII. Khazanie alleges that she is a female of Indian descent and a woman of color. She holds graduate degrees in business and accounting and was repeatedly recognized for the quality of her work. Meanwhile, Thornsvard actively avoided providing Khazanie one-on-one training despite standing weekly training meetings with white women. In addition, Thornsvard told Khazanie that she noticed Khazanie took her hair down for male managers who came to her office for a meeting. On numerous occasions, Thornsvard commented on Khazanie's eating habits and willpower and repeatedly described Khazanie's attire as too corporate and her personality as too happy and too talkative.

The reasons given for Khazanie's termination are not only belied by the feedback provided by supervisors, deans, and department chairs, but no one ever spoke to Khazanie about her lack of competence or advanced skills. These reasons, in light of her other factual allegations, are not "so obviously an irrefutably sound and unambiguously nondiscriminatory and non-pretextual explanation that it renders [Khazanie's] claim of pretext implausible", Woods, 855 F.3d at 649, as it relates to race, color, and sex.

Her allegations that she is a woman of color and Indian descent coupled with Thornsvard's treatment of her and the consistent high praise she received,

contrasted with the reasons given for her termination "nudge[]" her claim "across the line from conceivable to plausible", Twombly, 550 U.S. at 570. The motion to dismiss Count One against UNC-CH as to race, color, and sex is denied. These same facts in Khazanie's proposed Amended Complaint would survive a motion to dismiss. Therefore, she is granted leave to amend her Complaint as to Count One against UNC-CH on the basis of race, color, and sex.

On the other hand, Khazanie has not sufficiently alleged facts to support a plausible inference that UNC-CH discriminated against her because of her national origin or religion. Because there are no proposed substantive factual changes, amendment would be futile. Therefore, the motion to amend Count One against UNC-CH on the bases of national origin and religion is denied and Count One is dismissed to the extent that it alleges discrimination because of Khazanie's national origin and religion.

3.

Next, Defendants challenge the sufficiency of the allegations of retaliation in violation of Title VII (Count Two). They argue that, assuming Khazanie's discussion with Ragan is protected activity, she has not sufficiently alleged that but for that discussion she would not have been terminated, in part because the time that lapsed between those two events. (Br. in Spp. at 19-20.) Defendants oppose amendment based on futility.

Title VII prohibits an employer from discriminating against an employee "because [s]he has opposed any practice" that is unlawful under Title VII "or

13

because [s]he has made a charge . . . or participated in any manner in an investigation . . ." of a practice that is unlawful under Title VII. 42 U.S.C. § 2000e-3(a). Opposition activity is protected when the plaintiff "reasonably believe[s] that the employment action she opposed constituted a Title VII violation" and "her conduct in opposition was reasonable". Netter v. Barnes, 908 F.3d 932, 937-38 (4th Cir. 2018) (citing Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 282 (4th Cir. 2015); Laughlin v. Metro Wash. Airports Auth., 149 F.3d 253, 359-60 (4th Cir. 1998)).

Problematic for each instance of alleged protected activity here is the fashion in which each is alleged, either vaguely, speculatively, or conclusorily. Khazanie alleges that she filed a grievance "about the treatment received from Thornsvard" but fails to allege what treatment it was that she reported. Although she alleges that she discussed with Ragan Thornsvard's "discriminatory treatment of her", the description of that treatment as discriminatory is conclusory and again Khazanie has not alleged what treatment it was that she discussed with Ragan. Thus, she has not sufficiently alleged facts that permit a reasonable inference that she filed a grievance about or discussed actions that violated or that she reasonably believed violated Title VII. Likewise, she alleges that she showed the Associate Dean of Student Affairs[3] "hostile emails" from Thornsvard, but nowhere does she allege the content of those emails such that it could reasonably

---

[3] Khazanie does not allege where in the hierarchy of UNC-CH the Associate Dean of Student Affairs falls.

14

be inferred that the content of those emails violated or could reasonably be understood to violate Title VII. Because Khazanie proposes no substantive changes to her Amended Complaint, it would be futile to permit amendment of Count Two. Therefore, the motion to amend is denied, and the motion to dismiss Count Two is granted.

4.

Defendants also challenge Khazanie's claim of race discrimination in violation of 42 U.S.C. § 1981 apparently alleged against all Defendants. They first argue that 42 U.S.C. § 1983 is the exclusive federal remedy for violations of § 1981 rights by state actors and, therefore, the § 1981 claim against UNC-CH and the individual defendants in their official capacities should be dismissed. (Br. in Supp. at 21 (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989)).) In Khazanie's proposed Amended Complaint, though, she reframes Count Three as a claim against the individual defendants in their individual capacities pursuant to §§ 1981 and 1983.

Defendants next challenge the sufficiency of the allegations in support of the claim. They contend that, in addition to the reasons the Title VII claims fail, Khazanie has not alleged facts that allow for a plausible inference that but for her race she would not have been terminated or that Rimer or Ragan engaged in any wrongful conduct. (Id. at 23-24.)

When a person acts under color of state law and deprives another person of rights secured by the Constitution and laws, she is liable for such action. 42 U.S.C.

15

§ 1983. Section 1981 provides that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts, sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of person and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). As with her Title VII claims, Khazanie is not required to allege a prima facie case of race discrimination, but she must "allege sufficient 'fact matter (taken as true) to suggest' a cognizable cause of action." Woods, 855 F.3d at 648.

For the same reasons that Khazanie sufficiently alleged discrimination in violation of Title VII, she has alleged that Thornsvard violated §§ 1981 and 1983. See Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (explaining that personal liability under § 1983 requires that the individual have "acted personally in the deprivation of the plaintiff's rights"). There are no substantive factual changes to the proposed Amended Complaint. Therefore, the motion to amend Count Three as to Thornsvard's alleged discrimination in violation of §§ 1981 and 1983 is granted.

Although Khazanie sufficiently alleged a §§ 1981 and 1983 discrimination claim against Thornsvard, she has not done so against Ragan or Rimer. At the outset, neither is alleged to have personally discriminated against Khazanie because of her race. Moreover, an attempt to hold them liable as supervisors fares no better. Khazanie alleges that neither Ragan nor Rimer took any action after she reported "Thornsvard's actions" to Ragan. Much more is required to hold a supervisor liable under § 1983. The supervisor must have "actual or

16

constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff", "the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offense practices," and there must be "an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). Khazanie's allegations against Ragan and Rimer as supervisors fall woefully short. Because she proposes no substantive factual changes in her Amended Complaint, the motion to amend as to Ragan and Rimer is denied as futile.

Khazanie also proposes adding retaliation in violation of §§ 1981 and 1983 to Count Three. See CBOCS West, Inc. v. Humphries, 553 U.S. 442, 446 (2008) (holding that "§ 1981 encompasses retaliation claims"). However, for the same reasons that the Title VII retaliation claim fails, so, too, would the claim of retaliation in violation of §§ 1981 and 1983 because Khazanie proposes no substantive factual changes. Therefore, the motion to amend Count Three to add retaliation is denied.

5.

In sum, what survives in the form of the Amended Complaint is a claim against the University of North Carolina at Chapel Hill and UNC Gillings School of Global Public Health for discrimination on the basis of race, color, and sex in

17

violation of Title VII and a claim against Thornsvard for discrimination in violation of 42 U.S.C. §§ 1981 and 1983.

III.

For the reasons explained in this Memorandum Opinion, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint [Doc. #18] is granted in part and denied in part as stated herein, and Plaintiff's Motion to Amend Complaint [Doc. #27] is granted in part and denied in part as stated herein. IT IS FURTHER ORDERED that Plaintiff has fifteen days from the date of this order to file the Amended Complaint in accordance with this Memorandum Opinion.

This the 10th day of November, 2021.

/s/ N. Carlton Tilley, Jr.<br>Senior United States District Judge