UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:20-cv-01096

| | |
|---|---|
| SUPRIYA KHAZANIE, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | **SECOND** |
| v. ) | **PLAINTIFF'S** |
| ) | **MOTION TO EXTEND THE** |
| ) | **DISCOVERY DEADLINE** |
| UNIVERSITY OF NORTH ) | |
| CAROLINA AT CHAPEL HILL, ) | |
| and KATIE THORNSVARD, in ) | |
| her individual capacity, ) | |
| ) | |
| Defendants. ) | |

NOW COMES the Plaintiff and moves the Court to extend the discovery deadline and in support of this Motion shows the Court the following:

1. In Plaintiff's Amended Complaint (DE25), Plaintiff alleged as

    follows:

Plaintiff received a quarterly review in April 2019 for the first quarter of 2019. In the quarterly review, Defendants praised Plaintiff's "exceptional technical knowledge and amazing skills," and otherwise made no mention of any perceived lack of competence at the advanced level. Although Plaintiff repeatedly requested subsequent quarterly reviews which were standard, no additional quarterly reviews were provided to her either orally or in writing. On no occasion did Defendants ever speak to Plaintiff

-1-

about a lack of competence or advanced skills.

(DE25, ¶ 19)

    2.    In Defendants' Answer (DE39), Defendants responded as follows:

It is admitted that Plaintiff received a written quarterly review in April of 2019 which speaks for itself as to its content. It is further admitted that while Plaintiff received on-going feedback during her employment, no further written quarterly reviews were provided to Plaintiff. Except as admitted, this Paragraph is denied.

(DE39, ¶19)

    3.    Further, in Plaintiff's Amended Complaint (DE25), Plaintiff alleged as follows:

In the only quarterly review Plaintiff received, rather than suggesting the need to improve her ability to work independently, Plaintiff's supervisor stated: "She is very analytical and I like the way she works through issues and challenges in her work."

(DE25, ¶ 20)

    4.    In Defendants' Answer (DE39), Defendants responded as follows:

It is admitted that Plaintiff received a written quarterly review in April of 2019 which speaks for itself as to its content. Except as admitted, this Paragraph is denied.

(DE39, ¶20)

    5.    In the deposition of Steve Ragan (attached to this Motion as **Exhibit 1**), the Human Resources (HR) director for the Gillings School of

Public Health, Ragan testified that the first formal evaluation of Plaintiff took place on a form identified as Exhibit 10 (attached to this Motion as **Exhibit 2)** but that no subsequent evaluations were provided Plaintiff using this form. (Ragan Dep. p52:15-21)

6. Exhibit 10, the form on which Plaintiff's first review was recorded, states in pertinent part as follows:

> Off-Cycle review are check-ins between supervisors and employees during the performance cycle that occur as often as is necessary. . . . . *Probationary reviews must be completed quarterly (recommend July, October, January, April).* . . . Supervisors may conduct additional off-cycle review as often as necessary. *Supervisors are expected to meet with the employees, review the employee's progress on the institutional and individual goals on the performance plan, and provide the employee and opportunity to ask for any clarification of expectations.* The supervisor documents the conversation (<u>at least a paragraph summarizing the employee's performance so far in the cycle</u>) and *both the supervisor and the employee initial the review.*

(Underlining in original; italics are emphasis added.)

7. Ragan testified that Plaintiff's first quarter formal evaluation was excellent. (Ragan Dep 62:2-62:22) He also testified that in lieu of similar subsequent formal evaluations, Plaintiff got coaching through emails from Defendant Thorsvard which practice was approved by Defendant's central HR office. (Ragan Dep 67:23 – 69:12)

8. Defendant Thorsvard also testified that she only gave Plaintiff one formal review and that no additional formal reviews were required to be completed by either HR director Ragan or UNC central HR. [Deposition not yet available at the time of the filing of this Motion.]

9. It is a central issue in this case whether UNC HR policy (Dep Exh 10 and 38-attached to this Motion as **Exhibit 3**) required written quarterly evaluations of Plaintiff and whether Plaintiff received sufficient feedback from her supervisor and Defendant UNC regarding the alleged performance deficiencies identified in her dismissal letter (Plaintiff's Dep Exh 12-attached to this Motion as **Exhibit 4**):

> "Based upon my review and evaluation of your ability to meet the expectations of this position, specifically your lack of competence at the advanced level, inability to work independently, low work output, and your inability to recognize inaccuracies in your calculations and reporting, I have decided to separate you from employment effective January 6, 2020."

10. Defendants' Answer [DE39] gave no hint that Defendants' would argue that neither UNC HR personnel policy nor UNC central HR required Plaintiff to receive formal written quarterly assessments of her performance like the first written quarterly assessment which praised Plaintiff's competence, her ability to work independently, her work output and her

-4-

recognition of inaccuracies in her work which were noted to be few, especially if she stopped meeting her supervisor's expectations.

11. The testimony by Ragan, the Gillings School's then HR director, and Defendant Thorsvard that no such evaluations were required is quasi-expert and quasi-fact testimony and Defendants' reliance on this justification for Plaintiff's lack of formal evaluations was only disclosed by Defendants in depositions and after it was too late for Plaintiff to conduct further discovery and obtain a rebuttal witness to this point during the discovery period which the Court has not extended as of the date of this Motion.

12. Plaintiff has now identified a witness who is able to rebut this testimony by Ragan and Thorsvard that the decision not to provide Plaintiff with additional formal quarterly evaluations was not consistent with UNC policy. Therefore, Plaintiff should be allowed to supplement her discovery responses to provide name to Defendants as a potential fact or expert witness and allow Defendants' to conduct discovery as to the same, if desired.

13. In addition, during Ragan's deposition, he declined to identify other individuals with whose termination he had been involved and answer additional questions about the process involved in those terminations without documents in front of him which would make his testimony nonspeculative.

(Ragan Dep 20:4 – 34:6)

14. Parties in a civil action should have generous discovery, and "the discovery rules are given 'a broad and liberal treatment.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co. Inc.,* 967 F.2d 980, 983 (4th Cir.1992) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507 (1947)). The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1): "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The Fourth Circuit has further explained that in the discovery context, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* (emphasis added). Thus, the standard of relevance for discovery and admissibility of evidence at trial is not the same and a party's speculation is allowed during discovery.

15. Both Ragan's experience and application of UNC HR policy during his tenure generally with regard to employee terminations and as it applied to Plaintiff should be fairly discoverable since Defendants' are relying on an argument that it was permissible for Plaintiff to be treated as she was regardless of the requirements of HR policy when she was terminated.

16. Plaintiff could not have known and did not know about

Defendant's reliance on this argument until Ragan's and then Thorsvard's depositions which were scheduled in cooperation with Defendants' counsel.

Therefore, in the interests of justice and the spirit of the rule of civil procedure governing discovery, Plaintiff moves this Court again to extend the discovery period for 45 days to allow discovery into the adherence of Defendants to UNC HR policy generally as to terminations and as it relates specifically to Plaintiff's termination.

Respectfully submitted, this the 9th day of March 2023.

| | |
|---|---|
| /s/ VALERIE L. BATEMAN | /S/ JUNE K. ALLISON |
| Valerie L. Bateman | June K. Allison |
| NC State Bar No. 13417 | NC State Bar No. 9673 |
| NEW SOUTH LAW FIRM | NEW SOUTH LAW FIRM |
| 209 Lloyd Street, Ste 350 | 233 S. Laurel Avenue |
| Carrboro, North Carolina 27510 | Charlotte, NC 28207 |
| Tel: 919-810-3139 | Tel: 704-277-0113 |
| Fax: 919-823-6383 | Fax: 919-823-6383 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this **SECOND MOTION TO EXTEND THE DISCOVERY DEADLINE** was filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who have made an appearance in this matter.

This the 9th day of March 2023.

S/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM

**CERTIFICATE OF WORD COUNT**

I certify that the foregoing document conforms to the requirements of LR 7.3(d). The length of the memorandum is less than 6250 words, excluding the caption, signature lines, certificate of service, and any cover page or index.

S/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM
