Exhibit 15

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:20-cv-01096

| | |
|---|---|
| SUPRIYA KHAZANIE,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, and KATIE THORNSVARD, in her individual capacity,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST REQUESTS FOR ADMISSIONS** |

Plaintiff hereby submits the following responses to Defendants First Requests for Admissions to Plaintiff:

1. *Admit that your continued employment with the University as a Financial Analyst was contingent upon you successfully completing a 12- month probationary period. (Conditions of Employment SHRA Permanent Employee Appointment attached as Exhibit A)*

RESPONSE: It is admitted that Plaintiff was told that she was hired in a probationary position which would last for twelve months and that at the end of that time, she would become a permanent State employee if she had no performance or conduct issues. It is further admitted that Plaintiff was not informed of any performance or conduct issues during the entire time she worked for Defendants. It is further admitted that Defendants' terminated Plaintiff in retaliation for her complaining about Defendant Thorsvard's discriminatory treatment of Plaintiff.

2. *Admit that your employment with the University was discontinued or terminated on January 6, 2020 while you were still a probationary employee.*

RESPONSE: It is admitted that Plaintiff was told that she was hired in a probationary position which would last for twelve months and that at the end of that time, she would become a permanent State employee if she had no performance or conduct issues. It is further admitted that Plaintiff was not informed of any performance or conduct issues during the entire time she worked for Defendants. It is further admitted that Defendants' terminated Plaintiff in retaliation for her complaining about Defendant Thorsvard's

discriminatory treatment of Plaintiff.

3.      *Admit that you did not submit, file, or lodge any formal or informal complaints or grievances regarding your employment with the University prior to January 6, 2020.*

RESPONSE:  Objection to ambiguous and compound question, but otherwise denied.

4.      *Admit that Exhibit B is a true and accurate copy of your SHRA Grievance Initial Filing Form dated January 17, 2020.*

RESPONSE: Admitted.

5.      *Admit that you signed the attached Exhibit C, Agreement to Mediate, your grievance on March 11, 2020 attesting that:*
*I have read, understand, and accept the above conditions.*

RESPONSE: It is admitted I signed the Agreement to Mediate and that the document speaks for itself.

*6.    Admit that the executed March 11, 2020 Agreement to Mediate states in part the following:*

*4.  That either party may request a brief recess at which time they may consult with legal counsel or other advisors. If an agreement is reached, either party may have legal counsel or other advisors review the agreement during the mediation. Due to the time limitations, recesses will be limited to no more than 15 minutes. At the mediator's discretion, time may be extended as needed.*

*. . .*

*8.  If an agreement is reached, the agreement should be binding. Subject to the approval of the Office of State Human Resources and/or state agency whose approval is necessary to implement the agreement, and provided the agreement does not contain any provision contrary to NC Human Resources Commission policies or rules, or applicable state or federal law.*

RESPONSE:  It is admitted I signed the Agreement to Mediate and that the document speaks for itself.

Case 1:20-cv-01096-TDS-JEP   Document 72-15   Filed 03/24/23   Page 4 of 38

7.    *Admit that you signed the Memorandum of Settlement Agreement attached as Exhibit D.*

RESPONSE:    It is admitted I signed the Memorandum of Settlement Agreement and that the document speaks for itself.

8.    *Admit that you signed the attached Exhibit D Memorandum of Settlement Agreement on March 11, 2020 attesting that:*

*I understand and agree that by signing this Memorandum of Agreement, I release the Respondent, that applicable Agency, Commission and/or Division, and the State of North Carolina from any and all claims that I may have related to my employment and the alleged action(s) that led to this grievance. I further agree and understand that no further grievance, complaint, legal action or remedy can be pursued against the Respondent, the applicable Agency, Commission and/or Division, or the State of North Carolina related to my*

*employment or the actions(s) that led to this grievance.*

RESPONSE:   It is admitted I signed the Memorandum of Settlement Agreement and that the document speaks for itself.  It is further admitted that I conferred with my lawyer who told me that the only way UNC would agree to change my termination to a resignation was if I signed the Agreement, but that it was her opinion that if UNC tried to argue that the broad and general language of the release barred my complaint under federal anti-discrimination statutes, that we could and would argue the language in the release was not specific enough to waive any claims under federal civil rights laws, that the State mediation process was only required by State law and was only intended to release claims made under Chapter 126 of the North Carolina General Statutes, and that the State mediation process had no authority to require a State employee to waive his or her rights under federal law especially pertaining to the terms and conditions of my employment prior to being illegally terminated one week before becoming a permanent state employee. I did not knowingly and voluntarily intend to waive any rights I had under federal law when I signed the Agreement, only my claims under State law, and I have never attempted to appeal my termination under State law.

Case 1:20-cv-01096-TDS-JEP   Document 72-15   Filed 03/24/23   Page 6 of 38

9.    *Admit that you signed the attached Exhibit D Memorandum of Settlement Agreement at the conclusion of the mediation on March 11, 2020 attesting that:*

*I have read, understand, and agree that the above terms of agreement are an accurate account of the areas of agreement reached in the mediation process and that all matters in the dispute between the grievant and the agency have been settled with the terms of this agreement.*

RESPONSE:

It is admitted I signed the Memorandum of Settlement Agreement and that the document speaks for itself.  It is further admitted that I conferred with my lawyer who told me that the only way UNC would agree to change my termination to a resignation was if I signed the Agreement, but that it was her opinion that if UNC tried to argue that the broad and general language of the release barred my complaint under federal anti-discrimination statutes, that we could and would argue the language in the release was not specific enough to waive any claims under federal civil rights laws, that the State mediation

process was only required by State law and was only intended to apply to claims under State law, and that the State mediation process had no authority to require a State employee to waive his or her rights under federal law especially pertaining to the terms and conditions of my employment prior to being illegally terminated one week before becoming a permanent state employee. I did not knowingly and voluntarily intend to waive any rights I had under federal law when I signed the Agreement, only my claims under State law, and I have never attempted to appeal my termination under State law.

10.   *Admit that you were represented by counsel at the March 11, 2020 mediation.*

RESPONSE: It is specifically denied that my attorney was allowed to be present or represent me at the mediation. It is admitted that I was allowed to confer with my attorney during the mediation.

11.   *Admit that you voluntarily and knowingly signed Exhibit D.*

RESPONSE: It is admitted I signed Exhibit D. As stated above, it is further admitted that I conferred with my lawyer who told me that the only way UNC would agree to change my termination to a resignation was if I signed the Agreement, but that it was her opinion that if UNC tried to argue that the broad and general language of the release barred my complaint under federal anti-discrimination statutes, that we could and would argue the language in the release was not specific enough to waive any claims under federal civil rights laws, that the State mediation process was only required by State law and only intended to release claims made under Chapter 126 of the North Carolina General Statutes, and that the State mediation process had no authority to require a State employee to waive his or her rights under federal law especially pertaining to the terms and conditions of my employment prior to being illegally terminated one week before becoming a permanent state employee. I did not knowingly and voluntarily intend to waive any rights I had under federal law when I signed the Agreement, only my claims under State law, and I have never attempted to appeal my termination under State law.

12.   *Admit that the Memorandum of Settlement Agreement that you signed on March 11, 2020 was not subject to approval by the Office of State Human Resources and/or another state agency.*

RESPONSE: I have no idea whether the Memorandum of Settlement Agreement was subject to approval by the Office of State Human Resources (OSHR), therefore, based on my lack of information and belief about whether OSHR was required to approval the agreement, I deny this request.

13.   *Admit that Exhibit E is a true and accurate copy of the resignation letter that you signed March 11, 2020.*

RESPONSE: It is admitted I signed Exhibit E and that the document speaks for itself.

14.   *Admit that you signed Exhibit E after consulting with your attorney.*

RESPONSE: It is admitted that I signed Exhibit E after conferring with my lawyer who told me that the only way UNC would agree to change my

termination to a resignation was if I signed the Agreement, but that it was her opinion that if UNC tried to argue that the broad and general language of the release barred my complaint under federal anti-discrimination statutes, that we could and would argue the language in the release was not specific enough to waive any claims under federal civil rights laws, that the State mediation process was only required by State law and only intended to release claims made under Chapter 126 of the North Carolina General Statutes, and that the State mediation process had no authority to require a State employee to waive his or her rights under federal law especially pertaining to the terms and conditions of my employment prior to being illegally terminated one week before becoming a permanent state employee. I did not knowingly and voluntarily intend to waive any rights I had under federal law when I signed the Agreement, only my claims under State law, and I have never attempted to appeal my termination under State law.

15. *Admit that you had an opportunity to consult with an attorney prior to signing Exhibit E.*

RESPONSE: It is admitted that I signed Exhibit E after conferring with my lawyer who told me that the only way UNC would agree to change my

termination to a resignation was if I signed the Agreement, but that it was her opinion that if UNC tried to argue that the broad and general language of the release barred my complaint under federal anti-discrimination statutes, that we could and would argue the language in the release was not specific enough to waive any claims under federal civil rights laws, that the State mediation process was only required by State law and only intended to release claims made under Chapter 126 of the North Carolina General Statutes, and that the State mediation process had no authority to require a State employee to waive his or her rights under federal law especially pertaining to the terms and conditions of my employment prior to being illegally terminated one week before becoming a permanent state employee. I did not knowingly and voluntarily intend to waive any rights I had under federal law when I signed the Agreement, only my claims under State law, and I have never attempted to appeal my termination under State law.

16. *Admit that you voluntarily and knowingly signed Exhibit E.*

RESPONSE: It is specifically denied that I voluntarily and knowingly signed Exhibit E with the intention of waiving any rights I had under federal law and

-12-

that I only intended to waive my claims under the State law grievance procedure and State law, and consistent with this intention, I have never attempted to appeal my termination under State law.

17.   *Admit that you were not under legal duress when you signed Exhibit E.*

 RESPONSE: Objection to ambiguous request but it is admitted that I was under legal duress during the mediation because I was not allowed to have my attorney present with me and because I had been terminated one week shy of becoming a permanent employee and after I complained about Defendant Thorsvard's discriminatory treatment of me.

18.   *Admit that you did not receive any payments of money or promises of payment of money in exchange for signing Exhibit D.*

RESPONSE: It is admitted that I have not received any payment of money from UNC. It is further admitted that the changing of my termination to a resignation was wholly inadequate consideration for waiving my rights under

Case 1:20-cv-01096-TDS-JEP   Document 72-15   Filed 03/24/23   Page 13 of 38

federal law, but I felt it was adequate consideration for waiving my rights under State law.

19.    *Admit that in accordance with the Exhibit D Memorandum of Agreement, Terms of Agreement, you were allowed to resign effective January 6, 2020 in lieu of the University's discontinuation of your employment as a Financial Analyst.*

RESPONSE: It is admitted that I signed the Agreement and the resignation letter and in return I agreed not to contest my termination further in the State grievance process and under State law.

20.    *Admit that you were the only employee in Gillings School of Global Public Health who held the position of Senior Financial Analyst.*

RESPONSE: I do not know the classification of other employees in the Gillings

School of Global Public Health and so I cannot admit this Request for lack of information and belief; therefore, it is denied. This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

21.    *Admit that you were allowed to work remotely on March 4, 2019, March 15, 2019, March 29, 2019, April 1, 2019, April 26, 2019, May 23, 2019, May 24, 2019, June 21, 2019, July 5, 2019, July 8, 2019, July 26, 2019, July 29, 2019, and November 27, 2019.*

RESPONSE: I do not know the specific dates on which I was allowed to work remotely and so I cannot admit this Request for lack of information and belief; therefore, it is denied. This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

22.  *Admit that you were on vacation from October 10, 2019 until October 27, 2019.*

RESPONSE: I do not recall the specific dates on which I was on vacation and so I cannot admit this Request for lack of information and belief; therefore, it is denied.  This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

23.  *Admit that you received the following training in January of 2019: Using GradStar to View and Enter Student Awards and Using GradStar to Make Award Adjustment and Splits.*

RESPONSE: It is admitted that I received some training, but it was inadequate to perform the specific tasks assigned to me, and I had to seek assistance from others and/or train myself.  I do not recall the specific name of

the training I attended in January 2019, and so I cannot admit this Request for lack of information and belief; therefore, it is denied. This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

24. *Admit that you received InfoPorte and Finance Reporting training after you started working at the University.*

RESPONSE: It is admitted that I received some training, but it was inadequate to perform the specific tasks assigned to me and I had to seek assistance from others and/or train myself. It is further admitted that I do not recall the specific name of the training I received, and so I cannot admit this Request for lack of information and belief; therefore, it is denied. This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

25. *Admit that you received FERPA, Safe Zone, and Procurement training*

*after you started working at the University.*

RESPONSE: It is admitted that I received some training, but it was inadequate to perform the specific tasks assigned to me and I had to seek assistance from others and/or train myself. It is further admitted that I do not recall the specific name of the training I received, and so I cannot admit this Request for lack of information and belief; therefore, it is denied. This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

26. *Admit that you were offered Opening Doors training after you started working at the University.*

RESPONSE: It is admitted that I received some training, but it was inadequate to perform the specific tasks assigned to me and I had to seek assistance from others and/or train myself. It is further admitted that I do not recall the specific name of the training I received, and so I cannot admit this Request for lack of information and belief; therefore, it is denied. This response will be supplemented if additional information is obtained during discovery

Case 1:20-cv-01096-TDS-JEP   Document 72-15   Filed 03/24/23   Page 18 of 38

that provides me sufficient information and belief to admit it.

27.   *Admit that you attended one session of the Opening Doors training while you were employed with the University.*

RESPONSE: RESPONSE: It is admitted that I received some training, but it was inadequate to perform the specific tasks assigned to me and I had to seek assistance from others and/or train myself.  It is further admitted that I do not recall the specific name of the training I received, and so I cannot admit this Request for lack of information and belief; therefore, it is denied.  This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

28.   *Admit that you decided not to attend the second session of Opening Doors training while you were employed with the University.*

Case 1:20-cv-01096-TDS-JEP   Document 72-15   Filed 03/24/23   Page 19 of 38

RESPONSE: RESPONSE: It is admitted that I received some training, but it was inadequate to perform the specific tasks assigned to me and I had to seek assistance from others and/or train myself. It is further admitted that I do not recall the specific name of the training I received, and so I cannot admit this Request for lack of information and belief; therefore, it is denied. This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

29.    *Admit that you received Tableau Enterprise training with Bryan Andregg while you were employed with the University.*

RESPONSE: RESPONSE: It is admitted that I received some training, but it was inadequate to perform the specific tasks assigned to me and I had to seek assistance from others and/or train myself. It is further admitted that I do not recall the specific name of the training I received, and so I cannot admit this Request for lack of information and belief; therefore, it is denied. This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

*30.   Admit that you were counseled regarding the manner in which you communicated with other employees while you were employed with the University.*

RESPONSE: It is admitted that Defendant Thorsvard as part of her discriminatory treatment of me singled me out on occasions for criticism that she did not subject other employees to even though my communication with other employees was the same as their communication with fellow employees. She also accused me of putting my hair down when I talked to male professors. And she made numerous comments about my eating habits. Defendant Thorsvard also did not correct other employees who made remarks to me such as on the occasion one employee called me a diversity hire.  It is denied that Defendant Thorsvard or any other person in the Gillings School ever addressed any performance or conduct issues, including my communication skills, with me either in writing or orally that were intended to be taken as serious matters to be improved.  The comments made by Defendant Thorsvard about my communication skills were obvious attempts to belittle me and I did not see them as serious attempts to improve my communication skills because she

never gave me any specific examples or put anything in writing to me and she never corrected anyone else for their own communication skills or lack thereof.

31. *Admit that you were counseled regarding being late for work while you were employed with the University.*

RESPONSE: It is admitted that Defendant Thorsvard as part of her discriminatory treatment of me singled me out on occasions for criticism for flexing my time, that is coming in a few minutes after a certain time, and staying proportionately later to work a full day. To the extent that Defendant Thorsvard "counseled" me about my coming and going, she did so in order to treat me differently from other employees and it is denied that Defendant Thorsvard or any other person in the Gillings School ever addressed any attendance issues with me either in writing or orally in such a manner that I understood any serious matter needed to be improved. The comments made by Defendant Thorsvard about my comings and goings were obvious attempts to belittle me, such as when she informed the entire working group that I was going to be flexing my time to attend a yoga retreat, and I did not see them as

serious attempts to cause me to change my attendance because she never gave me any specific examples or put anything in writing to me and she never corrected anyone else for their own communication skills or lack thereof. In addition, Defendant Thorsvard was frequently out of the office and working remotely and no one in the office was held accountable for meeting any particular time and attendance standards.

32. *Admit that you were counseled regarding the amount of time that you spent socializing with other employees while you were employed with the University.*

RESPONSE: It is admitted that Defendant Thorsvard as part of her discriminatory treatment of me singled me out on occasions for criticism for talking to other employees in the generous course of work. To the extent that Defendant Thorsvard "counseled" me about talking to other employees, she did so in order to treat me differently from other employees and it is denied that Defendant Thorsvard or any other person in the Gillings School ever addressed

Case 1:20-cv-01096-TDS-JEP   Document 72-15   Filed 03/24/23   Page 23 of 38

any socializing with other employees issues with me either in writing or orally in such a manner that I understood any serious matter needed to be improved. The comments made by Defendant Thorsvard about my talking to other employees, like her comments about my putting my hair down when meetings with male professors and my eating habits were obvious attempts to belittle me, and I did not see them as serious attempts to cause me to change who I talked to because she never gave me any specific examples or put anything in writing to me and she never corrected anyone else for their own communication skills or lack thereof. Defendant Thorsvard prided herself on her ability to keep her subordinates in their offices and away from each other and she encouraged us to keep our heads down and stay in our offices.

33. *Admit that you were counseled regarding the amount of time that you spent on the phone while you were employed with the University.*

RESPONSE: It is admitted that Defendant Thorsvard as part of her discriminatory treatment of me singled me out on occasions for criticism for talking to other employees on the phone in the generous course of work.

Because she actively discouraged her subordinates to talk to each other or to leave their offices, the only way to communicate with others was to use the telephone if email was inefficient for the purpose. To the extent that Defendant Thorsvard "counseled" me about being on the phone, she did so in order to treat me differently from other employees and it is denied that Defendant Thorsvard or any other person in the Gillings School ever addressed my use of the telephone with me either in writing or orally in such a manner that I understood any serious matter needed to be improved. The comments made by Defendant Thorsvard about my talking on the telephone, like her comments about my putting my hair down when meetings with male professors and my eating habits were obvious attempts to belittle me, and I did not see them as serious attempts to cause me to change who I talked to because she never gave me any specific examples or put anything in writing to me and she never corrected anyone else for their use of the telephone. Defendant Thorsvard prided herself on her ability to keep her subordinates in their offices and away from each other and she encouraged us to keep our heads down and stay in our offices and we had no alternative but to use the telephone to accomplish our jobs.

Case 1:20-cv-01096-TDS-JEP   Document 72-15   Filed 03/24/23   Page 25 of 38

34.    *Admit that you spent an excessive time at work engaged in non- work activities, including but not limited to on-line shopping and asking co- workers to take photos of your outfits, while you were employed with the University.*

RESPONSE: Denied.


Respectfully submitted, this the 14th day of October 2022.


/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM
209 Lloyd Street, Ste 350
Carrboro, North Carolina 27510
Tel:  919-810-3139
Fax: 919-823-6383
valerie@newsouthlawfirm.com
NC State Bar No. 13417
*Attorneys for Plaintiff*

/S/ JUNE K. ALLISON
June K. Allison
NEW SOUTH LAW FIRM
233 S. Laurel Avenue
Charlotte, NC  28207
Tel:  704-277-0113
Fax: 919-823-6383
june@newsouthlawfirm.com
NC State Bar No. 9673
*Attorneys for Plaintiff*

## CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has this day electronically served the foregoing **Plaintiff's Responses to Defendants' Requests for Admission** on the following:

Kari R. Johnson
Special Deputy Attorney General
N.C. Department of Justice
E-mail: kjohnson@ncdoj.gov

This the 14th day of October 2022.

/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM

Case 1:20-cv-01096-TDS-JEP   Document 72-15   Filed 03/24/23   Page 27 of 38

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:20-cv-01096

| | | |
|---|---|---|
| SUPRIYA KHAZANIE, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S** |
| | ) | **SUPPLEMENTED / AMENDED** |
| | ) | **RESPONSES TO** |
| v. | ) | **DEFENDANTS'** |
| | ) | **FIRST** |
| | ) | **REQUESTS FOR ADMISSIONS** |
| UNIVERSITY OF NORTH | ) | |
| CAROLINA AT CHAPEL HILL, | ) | |
| and KATIE THORNSVARD, in | ) | |
| her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff hereby submits the following responses to Defendants First

Requests for Admissions to Plaintiff:

21.    *Admit that you were allowed to work remotely on March 4, 2019, March*

*15, 2019, March 29, 2019, April 1, 2019, April 26, 2019, May 23, 2019,*

*May 24, 2019, June 21, 2019, July 5, 2019, July 8, 2019, July 26, 2019, July*

*29, 2019, and November 27, 2019.*


RESPONSE:  I do not know the specific dates on which I was allowed to work

remotely and so I cannot admit this Request for lack of information and belief; therefore, it is denied. This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

***Supplemented response:***

I do not recall the exact days that I worked from home. I joined UNC after being in both Investment Banking and Consulting, and had worked from home regularly prior to UNC. Katie regularly worked from home herself, but did not allow ANYONE in the department to do so. The few days that I did, she harassed me with emails, instant messages, and phone calls ALL DAY. My relatives and spouse that I went to visit can testify that I was harassed the entire day that I was remotely working, so these days are irrelevant. They are also especially irrelevant in 2022 in a post pandemic world where almost anyone is given the ability to work remotely.

23.  *Admit that you received the following training in January of 2019: Using GradStar to View and Enter Student Awards and Using GradStar to Make Award Adjustment and Splits.*

RESPONSE: It is admitted that I received some training, but it was inadequate to perform the specific tasks assigned to me, and I had to seek assistance from others and/or train myself.  I do not recall the specific name of the training I attended in January 2019,  and so I cannot admit this Request for lack of information and belief; therefore, it is denied.  This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

***Supplemented response:***

I was frustrated that Katie did not provide me with ANY training on how the systems work, so I contacted the university computer systems / training centers **on my own accord** and scheduled these trainings by myself. I also drove to the offsite offices (off of MLK in Chapel Hill) to attend these trainings. Katie told me that if I didn't arrive back at the office within 15 minutes of the

-3-

completion of these that I would have to take vacation time.

24.   *Admit that you received InfoPorte and Finance Reporting training after you started working at the University.*

RESPONSE: It is admitted that I received some training, but it was inadequate to perform the specific tasks assigned to me and I had to seek assistance from others and/or train myself. It is further admitted that I do not recall the specific name of the training I received, and so I cannot admit this Request for lack of information and belief; therefore, it is denied. This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

**Supplemented response:**

Again, this is a training I found and completed on my own accord. Katie did not so much as suggest training to me, and any statement on her part that she did so would be false.

25.   *Admit that you received FERPA, Safe Zone, and Procurement training after you started working at the University.*

RESPONSE: It is admitted that I received some training, but it was inadequate to perform the specific tasks assigned to me and I had to seek assistance from others and/or train myself.  It is further admitted that I do not recall the specific name of the training I received, and so I cannot admit this Request for lack of information and belief; therefore, it is denied.  This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

***Supplemented response:***

Again, this is a training I completed on my own because I saw students and friends that were suffering and needed help. There was a trans person on our hall who worked in another department who was struggling with their transition, and I registered for Safe Zone and another one about violence against women / harassment, and other trainings so that students that passed by would know that they could come and speak to me. Four students came to my office within days of this, but Katie got upset that "my door was closed" and

suggested I tell the students that I did not have the time to speak. These trainings were NOT suggested by Katie.

Also, these trainings (Safe Zone) is for LGTBQ+ students to have a place to come speak to someone with zero worries, and it gives the trainee the resources and lists of people to talk to about getting help. For example, if someone is transitioning and needs help with bullying, or if a woman is being stalked, how to change her class schedule. These trainings have nothing to do with finance; I took them because I thought there was a need to have someone provided this resource. Katie did not have the sensitivity or temperament to provide this resource.

26. *Admit that you were offered Opening Doors training after you started working at the University.*

RESPONSE: It is admitted that I received some training, but it was inadequate to perform the specific tasks assigned to me and I had to seek assistance from others and/or train myself. It is further admitted that I do not recall the specific name of the training I received, and so I cannot admit this

Case 1:20-cv-01096-TDS-JEP   Document 72-15   Filed 03/24/23   Page 33 of 38

Request for lack of information and belief; therefore, it is denied. This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

***Supplemented response:***

I was not offered this training and I do not recall ever attending Opening Doors. I believe it was an overnight program; I never went anywhere overnight.

27.    *Admit that you attended one session of the Opening Doors training while you were employed with the University.*

RESPONSE: It is admitted that I received some training, but it was inadequate to perform the specific tasks assigned to me and I had to seek assistance from others and/or train myself. It is further admitted that I do not recall the specific name of the training I received, and so I cannot admit this Request for lack of information and belief; therefore, it is denied. This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

***Supplemented response:***

I do not recall ever attending Opening Doors and believe it was an overnight program; I never went anywhere overnight.

28. *Admit that you decided not to attend the second session of Opening Doors training while you were employed with the University.*

RESPONSE: It is admitted that I received some training, but it was inadequate to perform the specific tasks assigned to me and I had to seek assistance from others and/or train myself. It is further admitted that I do not recall the specific name of the training I received, and so I cannot admit this Request for lack of information and belief; therefore, it is denied. This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

**Supplemented response:**

I do not recall ever attending Opening Doors and believe it was an overnight program; I never went anywhere overnight.

29.    *Admit that you received Tableau Enterprise training with Bryan Andregg while you were employed with the University.*

RESPONSE: It is admitted that I received some training, but it was inadequate to perform the specific tasks assigned to me and I had to seek assistance from others and/or train myself. It is further admitted that I do not recall the specific name of the training I received, and so I cannot admit this Request for lack of information and belief; therefore, it is denied. This response will be supplemented if additional information is obtained during discovery that provides me sufficient information and belief to admit it.

***Supplemented response:***

I deny that I received any training from Bryan Anderegg. He talked to me about our use case and proposed we setup a training. The Data Analytics team (Deytia and Nick (I believe) were allowed to go) but I was not. I was **never** allowed to attend Tableau training, work with any consultants, or advance my

Tableau training with outside help.

Respectfully submitted, this the 19th day of December 2022.

/s/ VALERIE L. BATEMAN                     /S/ JUNE K. ALLISON
Valerie L. Bateman                          June K. Allison
NEW SOUTH LAW FIRM                          NEW SOUTH LAW FIRM
209 Lloyd Street, Ste 350                   233 S. Laurel Avenue
Carrboro, North Carolina 27510              Charlotte, NC  28207
Tel:  919-810-3139                          Tel:  704-277-0113
Fax: 919-823-6383                           Fax: 919-823-6383
valerie@newsouthlawfirm.com                 june@newsouthlawfirm.com
NC State Bar No. 13417                       NC State Bar No. 9673
*Attorneys for Plaintiff*                    *Attorneys for Plaintiff*

## CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has this day electronically served the foregoing **Plaintiff's Supplemented / Amended Responses to Defendants' Requests for Admission** on the following:

Kari R. Johnson
Special Deputy Attorney General
N.C. Department of Justice
E-mail: kjohnson@ncdoj.gov

This the 19th day of December 2022.

/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM

-11-