Exhibit 16

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:20-cv-01096

| | |
|---|---|
| SUPRIYA KHAZANIE, )<br>)<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>)<br>)<br>UNIVERSITY OF NORTH )<br>CAROLINA AT CHAPEL HILL, )<br>and KATIE THORNSVARD, in )<br>her individual capacity, )<br>)<br>Defendants. ) | **PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES** |

Plaintiff hereby submits the following responses to Defendants' First Set of Interrogatories to Plaintiff:

**REPSONSES TO INTERROGATORIES**

1.  Identify the name, last known address, and telephone number of every person known to you or your attorney who has any knowledge regarding the events, issues, or claims referenced in the Amended Complaint, or any injuries or damages you contend you have suffered or incurred therefrom. In

-1-

address, residence, address and business telephone number, the subject matter on which each such person is expected to testify, and summary of the expert's opinions.

RESPONSE:

*At this time, no expert witnesses have been identified by Plaintiff.*

3. State each and every ground, and the factual basis for each, on which you deny the validity of the Memorandum of Settlement Agreement you signed March 11, 2020 which is attached as Exhibit D.

RESPONSE:

*The Memorandum of Settlement Agreement was understood by me to only prevent me from going further in the University grievance process which would eventually end up in the Office of Administrative Hearings. I conferred with my lawyer who told me that the only way UNC would agree to change my termination to a resignation was if I signed the Agreement, but that it was her opinion that if UNC tried to argue that the broad and general language of the release barred my complaint under federal anti-discrimination statutes, that we could and would argue the language in the release was not specific enough to waive any claims under federal civil rights laws, that the State mediation*

-5-

*process was only required by State law and was only intended to release claims made under Chapter 126 of the North Carolina General Statutes, and that the State mediation process had no authority to require a State employee to waive his or her rights under federal law especially pertaining to the terms and conditions of my employment prior to being illegally terminated one week before becoming a permanent state employee. I did not knowingly and voluntarily intend to waive any rights I had under federal law when I signed the Agreement, only my claims under State law, and I have never attempted to appeal my termination under State law, only under federal law.*

4. State each and every ground, and the factual basis for each, on which you deny the validity of the resignation letter that you prepared and signed March 11, 2020, attached as Exhibit E.

RESPONSE:

*I do not deny the validity of the resignation letter. I signed the resignation letter and agreed not to continue in the University grievance process in return for the University agreeing to change my termination, (which occurred one week before I became a career state employee, and which was in retaliation for my complaining about how I had been treated by Katie Thorsvard) to a resignation.*

-6-

5.  State the name and address of the attorney who represented you in connection with the mediation of your SHRA Grievance involving the University.

RESPONSE:

*Objection. This seeks information that is privileged.*

6.  If you contend that you did not voluntarily and knowingly sign the Memorandum of Settlement Agreement on March 11, 2020, state the factual basis for this contention and what, specifically, prevented you from knowingly and voluntarily entering into the Agreement.

RESPONSE:

*I do not contend that I did not voluntarily and knowingly sign the Agreement. I contend that I knowingly and voluntarily signed the resignation letter and Agreement with the understanding that I was not giving up any rights to pursue any claims I had under federal law. I agreed not to continue in the University grievance process in return for the University agreeing to change my termination (which occurred one week before I became a career state employee*

-7-

*and which was in retaliation for my complaining about how I had been treated by Katie Thorsvard) to a resignation.*

7.  If you contend that you were under duress or coerced when you signed the Memorandum of Settlement Agreement on March 11, 2020, state the factual basis for this contention and each and every way in which you contend you were coerced or under duress.

RESPONSE:

*I was under duress because I had been terminated for reasons known to be false to me and after I complained about my supervisor's discriminatory treatment of me to both Steve Ragan and Janet Scarce in Gillings HR and they took no action and did not investigate any of my allegations. I finally took action to go outside Gillings to attempt to address my supervisor's discriminatory treatment of me by reaching out to Associate Dean of Student Affairs Charletta Sims Evans and had a meeting with her on December 21, 2019. At this meeting, she promised to attend a meeting with me and Dean of Diversity and Inclusive Excellence Pauline Cipriani to be scheduled after I became a career State employee on January 14, 2020, but Katie terminated me for false reasons on January 6, 2020. Katie told me I was being terminated for the following reasons:*

*1) lack of competence*

*2) low work output*

*3) unable to work independently*

*4) inability to recognize inaccuracies*

*I knew these reasons were false and I felt trapped because she terminated me and because no one would investigate my complaints about her and she was allowed to terminate me without recourse. After I filed my grievance, it became clear that the University was going to cover up the situation and ignore my claims of discrimination and retaliation so I felt I had no recourse to agree to give up my claims to go further through the University process and that I would have to go outside the University to the EEOC in order to get justice. I would never have agreed to resign if I believed that I could not go to the EEOC.*

8. If you contend that the Memorandum of Settlement Agreement that you signed on March 11, 2020 was subject to the approval of the Office of State Human Resources and/or another state agency, state the factual basis for this contention and identify all relevant authority (including applicable statutes, policies, and regulations) which support this contention.

RESPONSE:

*I did not know whether the Agreement had to be approved by the Office of State Human Resources (OSHR). I have since learned that State policy says that the OSHR does not have to approve any agreements that only involve resignations in lieu of terminations.*

9. Describe in detail all acts of the University which you contend demonstrate an intent by the University to discriminate against you on the basis of race, color, or gender; stating for each the names of all individuals who you contend engaged in said conduct, the specific dates of said conduct, and a summary of each entity's or individual's alleged conduct.

RESPONSE:

*The details of the discriminatory and retaliatory treatment to which I was subjected are detailed in my Complaint herein, in my EEOC charge, a copy of which is provided in response to the request for production of documents, and my termination letter, a copy of which is also provided in response to the request for production of documents. Additional details, including dates and names, pertaining to the discriminatory and retaliatory treatment of me can be supplemented.*

-10-

## CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has this day electronically served the foregoing **Plaintiff's Responses to Defendants' First Set of Interrogatories** on the following:

Kari R. Johnson
Special Deputy Attorney General
N.C. Department of Justice
E-mail: kjohnson@ncdoj.gov

This the 19th day of December 2022.

/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM